**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **COREY PICOU** | **CIVIL ACTION** |
| **versus** | **NO. 06-6258** |
| **BURL CAIN, WARDEN** | **SECTION: "S" (3)** |

<u>**REPORT AND RECOMMENDATION**</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Corey Picou, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. At a bench trial held on June 6, 2003, he was convicted of carnal knowledge of a juvenile in violation of La.Rev.Stat.Ann. § 14:80.[2] On November 14, 2003, he was found to be a third offender and was sentenced as such to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[3] On March 3, 2004, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction, amended his sentence to delete the prohibition of parole, and affirmed the sentence as amended.[4] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[5] which was denied on October 1, 2004.[6]

Petitioner thereafter filed with the state district court an application for post-conviction relief[7] which was denied on May 4, 2005.[8] He next filed with the Louisiana Fourth Circuit Court of Appeal a related writ application[9] which was denied on July 13, 2005.[10] He then

---

[2] State Rec., Vol. II of II, transcript of June 6, 2003, p. 138; State Rec., Vol. I of II, minute entry dated June 6, 2003.

[3] State Rec., Vol. I of II, minute entry dated November 14, 2003.

[4] State v. Picou, No. 2003-KA-2070 (La. App. 4th Cir. Mar. 3, 2004) (unpublished); State Rec., Vol. I of II.

[5] State Rec., Vol. I of II.

[6] State v. Picou, 883 So.2d 1004 (La. 2004) (No. 2004-K-0869); State Rec., Vol. I of II.

[7] State Rec., Vol. I of II.

[8] State Rec., Vol. I of II, Judgment dated May 4, 2005.

[9] State Rec., Vol. I of II.

[10] State v. Picou, No. 2005-K-0962 (La. App. 4th Cir. July 13, 2005) (unpublished); State Rec., Vol. I of II.

filed with the Louisiana Supreme Court a related writ application[11] which was denied on June 2, 2006.[12]

On or about September 11, 2006, petitioner filed this federal application for *habeas corpus* relief.[13]  In support of his application, petitioner asserts the following claims:

1.  There was insufficient evidence to support petitioner's conviction;[14]

2.  Petitioner did not knowingly and intelligently waive his right to trial by jury;

3.  Hearsay was wrongly admitted at trial.

The state concedes that petitioner exhausted his state court remedies and that his application is timely filed.[15]

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

---

[11]  State Rec., Vol. I of II.

[12]  State *ex rel.* Picou v. State, 929 So.2d 1247 (La. 2006) (No. 2006-KH-0001); State Rec., Vol. I of II.

[13]  Rec. Doc. 4.

[14]  Petitioner asserts this as both his first and fourth claims in this proceeding.  Accordingly, those two claims will be considered together.

[15]  Rec. Doc. 8, pp. 1 and 4.

questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning.  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts.   The court may grant relief under the
> "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case.  The focus
> of the latter inquiry is on whether the state court's application of
> clearly established federal law is objectively unreasonable, and we
> stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court

will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction.  The

United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be

analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in
> habeas proceedings, "the relevant question is whether, after viewing
> the evidence in the light most favorable to the prosecution, any
> rational trier of fact could have found the essential elements of the
> crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).  This

Court may find the evidence sufficient even though the facts additionally support one or more

reasonable hypotheses which are consistent with petitioner's claim of innocence.  Foy v. Donnelly,

959 F.2d 1307, 1316 (5th Cir. 1992); see also Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991).

A sufficiency of the evidence argument presents a mixed question of law and fact.

Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213

F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court unless its decision

regarding the claim "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's

challenge to the sufficiency of the evidence, holding:

> La.R.S. 14:80(A)(1) provides in pertinent part that "carnal
> knowledge of a juvenile is committed when ... [a] person who is
> nineteen years of age or older has sexual intercourse, with consent,
> with a person who is twelve years of age or older but less than
> seventeen years of age ...."

It is undisputed that in August 2002 Mr. Picou was thirty-three years old and the victim was fifteen.  What Mr. Picou is disputing is whether there was sufficient evidence to prove that he had sexual intercourse with the victim.

When the judge found the defendant guilty of carnal knowledge of a juvenile, he began his statement by noting "evidentiary problems, poor police work and confusing testimony in this case."  The judge declared that he took the inconsistencies in the testimony into consideration and yet found the victim's account credible.   The defendant maintains that the judge's credibility determination was insufficient to support the conviction in the face of inconsistent and irreconcilable evidence.

In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  An appellate court is not permitted to consider just the evidence most favorable to the prosecution, but it must consider the record as a whole since that is what a rational trier of fact would do.  State v. Harge, 98-1321 (La. App. 4 Cir. 2/17/99), 730 So.2d 983.  An appellate court is not called upon to determine if it believes the witnesses or whether the conviction is contrary to the weight of the evidence.  State v. Smith, 600 So.2d 1319, 1324 (La. 1992).

Because the State proved the victim was less than seventeen years of age and that the defendant was more than nineteen, the only remaining question is whether a rational trier of fact could have found beyond a reasonable doubt that the victim and the defendant had sexual intercourse.

Three witnesses, the victim, her mother, and the victim's friend, testified to the offense, when it occurred, and/or how the victim's mother learned of it. The victim testified at trial that she had known Mr. Picou since she was a baby and that he dated both her and her mom.  The victim then stated that she had sex with the defendant in his car and in an abandoned house numerous times.  During the most recent time she was on her way to her friend's house when Mr. Picou told her that he wanted to go to the abandoned house with her. When they got to the abandoned house, they went into a room on the left side that the victim described as being large and having a green carpet.  Once inside the room Mr. Picou told her to perform oral sex on him and then had sexual intercourse with her.

- 6 -

The victim's friend testified that the defendant would often come by, and when he did, the victim would leave with him. She said that she saw the couple at the empty apartment and then was told by the victim that she and the defendant had sex. A week or two later she told the victim's mother about the relationship. The victim's friend also stated that she first told a relative and her relative told the victim's grandmother.

The victim's mother was inconsistent in her memory of when she first learned that her daughter had sex with the defendant. She said her daughter's friends told her and also claimed to have heard the news from the victim herself.

The defendant took the stand in his own defense and denied that he ever sexually involved himself with the victim. He argues that the only evidence of vaginal sexual intercourse is the testimony of the victim and her testimony is contradicted by his own testimony.

The judge chose to accept the testimony of the victim over that of the defendant. Testimony of the victim alone is sufficient to prove the elements of the offense. State v. Magee, 491 So.2d 454, (La. App. 1st Cir. 1986). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact. State v. Brumfield, 93-2404, (La. App. 4th Cir. 6/15/94), 639 So.2d 312, 316. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154, (La. 11/27/95), 663 So.2d 27, 35.

The victim's testimony was that she disrobed and the defendant penetrated her vaginally. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt all of the elements of the crime carnal knowledge of a juvenile.[16]

In the instant case, there was no physical evidence introduced to prove that petitioner had sexual intercourse with the victim; rather, petitioner was convicted primarily based on the testimony of the teenaged victim, the victim's mother, and the victim's teenaged friend. Of course, the absence of physical evidence is not a fatal defect. The testimony of the victim alone, even where

---

[16] State v. Picou, No. 2003-KA-2070, pp. 2-5 (La. App. 4th Cir. Mar. 3, 2004) (unpublished); State Rec., Vol. I of II.

that victim suffers from mental deficits, can be sufficient to support a conviction.  Peters v. Whitley,

942 F.2d 937, 941-42 (5th Cir. 1991) (testimonial evidence of woman with limited communication

skills and the mental age of a young child was found to be sufficient to support a rape conviction).

However, in this case, petitioner's claim is that each witness' testimony was so egregiously

inconsistent, both internally and when compared to the testimony of the other witnesses, that the

witnesses were necessarily incredible, rendering the testimonial evidence simply too unreliable to

support his conviction.

The Court is not unsympathetic to petitioner's claim.  Having reviewed the trial

transcript in its entirety, the Court is troubled by the testimony, which often resembled a bad Abbott

and Costello routine more than a criminal trial.  The witnesses seemed utterly confused by the

proceedings and the questions posed.  However, such confusion and inconsistencies do not, as

petitioner suggests, lead inexorably to the conclusion that the witnesses were lying.  Rather, an

equally plausible explanation is that the witnesses were not so much untruthful as simply hindered

by their extremely limited mental abilities.  The latter explanation is clearly the one accepted by the

trial judge, who stated:  "There were some problems I had with some of the testimony because I

think there is – you got to take the witnesses as they are with whatever physical or mental abilities

they do have."[17]

Moreover, the inconsistencies in the testimony, although undeniably disturbing, are

in many respects immaterial.  As the state courts noted, the only disputed issue in this case was an

extremely simple one, i.e. whether petitioner had sexual intercourse with the victim.  The victim,

---

[17]  State Rec., Vol. II of II, transcript of June 6, 2003, p. 138.

despite the other numerous inconsistencies in her testimony, was always consistent on that point:

they did in fact have consensual sexual intercourse.  The only other witness with direct knowledge

on that issue was petitioner himself, who denied having such relations.  Therefore, the crucial issue

was which of those two witnesses was lying on that point.  In making that determination, the trial

judge was clear:  "[W]hen it boils down to credibility in this case, I found the victim to be

credible."[18]  The judge, as the trier of fact, was obviously the one in the best position to make that

call, and it is a matter appropriately left to him.  Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder

Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review.");

United States v. Guidry, 456 F.3d 493, 506 (5th Cir. 2006) (same), cert. denied, 127 S.Ct. 996 (2007);

Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir.) ("All credibility choices and conflicting inferences

are to be resolved in favor of the verdict."), cert. denied, 126 S.Ct. 51 (2005).

          Ultimately, it must always be remembered that a federal court does not have the

authority to overturn a state court conviction simply because it might have weighed the evidence

differently or reached a different conclusion in the case.  Indeed, under Jackson, a federal court

"does not focus on whether the trier of fact made the *correct* guilt or innocence determination";

rather, the federal court looks only to whether the trier of fact "made a *rational* decision to convict

or acquit."  Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis added); see also Santellan, 271

F.3d at 193.  Under that exacting standard, it simply cannot be said that the judge acted *irrationally*

in finding petitioner guilty when the evidence is viewed in the light most favorable to the

prosecution.

---

   [18]  State Rec., Vol. II of II, transcript of June 6, 2003, p. 138.

In rejecting petitioner's challenge to the sufficiency of the evidence, the state court identified the proper standard, i.e. the Jackson standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

### Waiver of Jury Trial

Petitioner next claims that he did not knowingly and intelligently waive his right to trial by jury. Regarding the waiver, the transcript reflects the following exchange:

> THE COURT:
>        All right. Mr. Picou, you have a right to be tried before a judge or jury. It's my understanding you have selected a judge trial and that's why it's set on Friday. Is that still your intentions?
>
> DEFENDANT PICOU:
>        Yes, sir.
>
> THE COURT:
>        So, you understand you have that option and you're giving up that option now for a jury trial, is that right?
>
> DEFENDANT PICOU:
>        Yes, sir.
>
> THE COURT:
>        You're selecting a judge trial?
>
> DEFENDANT PICOU:
>        Yes, sir.[19]

---

[19]  State Rec., Vol. II of II, transcript of June 6, 2003, p. 3.

Petitioner now claims that his waiver was invalid because:

> The trial judge (1) did not inform Petitioner that a jury is composed of 12 members of the community; (2) did not inform Petitioner that he may participate in the selection of the jurors; (3) did not inform Petitioner that the jury's verdict must be at least 10 out of 12 to find him guilty (beyond a reasonable doubt) or not guilty of carnal knowledge of a juvenile in violation of La. R.S. 14:80; (4) did not inform Petitioner of the nature of the right to a jury trial and of the consequences of waiving same.[20]

When petitioner asserted this claim in his state post-conviction proceedings, the state district judge rejected the claim, holding: "The record reflects that the court advised the defendant of his right to trial by judge or jury and the defendant elected a judge trial. The court is under no legal obligation to inform the defendant of the composition of a jury or how many jurors must find him guilty."[21]

As a preliminary matter, this Court notes that petitioner contends that he "had little understanding as to what was a jury trial and the trial court failed to question him as to his understanding between a jury trial and bench trial."[22] That contention is patently absurd. Even if the Court ignores the fact that petitioner was represented by counsel, who is available and under an obligation to explain such matters to his client,[23] the fact remains that this was hardly petitioner's

---

[20]  Rec. Doc. 4, p. 4.

[21]  State Rec., Vol. I of II, Judgment dated May 4, 2005.

[22]  Rec. Doc. 4, supporting memorandum, p. 17.

[23]  To the extent petitioner is arguing that such advisements may only be made by the judge, he is clearly wrong. Even when a criminal defendant pleads guilty, there is no federal requirement that the judge himself advise a criminal defendant of his right to trial by jury. See, e.g., Barksdale v. Blackburn, 670 F.2d 22, 25 (5th Cir. 1982); Brown v. Jernigan, 622 F.2d 914, 915-16 (5th Cir. 1980).

first trip to the criminal courthouse.  Rather, he is a career criminal, having at least two prior convictions in state court.  For him now to feign ignorance of his right to a jury trial is ludicrous.

Further, in any event, the claim has no merit.  In support of his claim, petitioner cites state law requirements for waiver of trial by jury.  However, federal *habeas corpus* relief may be granted only to remedy violations of *federal* law; mere violations of *state* law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).  Federal relief will not be granted for a failure to comply with purely state law requirements regarding such waivers.  See Johnston v. Estelle, 548 F.2d 1238, 1240 (5th Cir. 1977).

Petitioner has cited no jurisprudence, and this Court has found none, which holds that the federal Constitution requires a detailed examination by the trial judge of a represented criminal defendant such as petitioner proposes.  On the contrary, the opposite is true.  United States *ex rel.* Williams v. DeRobertis, 715 F.2d 1174 (7th Cir. 1983) (a criminal defendant's ignorance of his right to participation in jury selection and to be convicted only upon a substantial majority vote of the jurors does not render his jury trial waiver invalid).  Under federal constitutional law, all that is required for a knowing and intelligent waiver of the right to a jury trial is for the criminal defendant to understand "that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge."  United States *ex rel.* Johnson v. Page, No. 94 C 0367, 1995 WL 430942 (N.D. Ill. July 18, 1995) (internal quotation marks omitted), aff'd, 78 F.3d 586 (7th Cir. 1996); see also DeRobertis, 715 F.2d at 1180.  Petitioner, a career criminal with a history of convictions and with benefit of counsel,

unequivocally stated on the record that he wished to waive his right to trial by jury and proceed with

a bench trial.  Under the facts of this case, that was sufficient.

Hearsay

Petitioner claims that an audiotape of a 911 call was inadmissible hearsay and was

therefore wrongly admitted into evidence at trial.

The state contends that the 911 tape, although played at trial, was ultimately found

to be inadmissible.  The transcript supports that contention.  Initially, the trial court indicated that

the tape would be allowed, but, upon hearing it, apparently discounted it:

> MR. MAHL [the prosecutor]:
>      Your Honor, at this point I'd like to offer, file and introduce
> the tape and play the tape.
>
> MR. HONORE [defense counsel]:
>      Objection, Your Honor, it's hearsay of hearsay.  I don't see
> what the relevance of it is.  It's someone calling in for a police officer
> who arrives at the scene.  The person who made the 911 tape is here
> and she can testify as to whatever facts she has, but –
>
> THE COURT:
>      I'm going to permit it in.
>
> MR. HONORE:
>      Note our objection.
>
> THE COURT:
>      The objection is noted.
>
> * * *
>
> (The audio tape is played aloud in the courtroom.)
>
> * * *
>
> THE COURT:

> I've heard enough.  "Somebody, somebody, somebody."
> Okay, let's move on.[24]

When it came time for formal introduction of the tape, it was disallowed:

> MR. MAHL:
> State's Exhibit 8 would be the 911 tape which I believe already offered, filed and introduced before.
>
> THE COURT:
> Any objection?
>
> MR. HONORE:
> It's hearsay on top of hearsay.
>
> THE COURT:
> Objection *sustained*.[25]

Nevertheless, the Court acknowledges that there is some confusion over this matter, in light of the trial judge's initial ruling the tape be admitted as well as his ruling on the post-conviction claim stating that the tape was admitted.[26]  Accordingly, out of an abundance of caution, the Court notes that federal relief would not be warranted even if the tape were deemed to have been admitted.

The United States Fifth Circuit Court of Appeals has held:

---

[24] State Rec., Vol. II of II, transcript of June 6, 2003, p. 18.

[25] State Rec., Vol. II of II, transcript of June 6, 2003, p. 105 (emphasis added).

[26] In denying the post-conviction claim, the trial judge stated: "The 'inadmissible hearsay' the defendant refers to is the 911 tape which the court allowed.  This Court finds that there was nothing prejudicial about the introduction of a 911 tape." State Rec., Vol. I of II, Judgment dated May 4, 2005.

> In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law. However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.

Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim presents an issue of state law which is not reviewable in this federal proceeding.

Additionally, to the extent that petitioner is claiming that the admission of the audiotape rendered his trial fundamentally unfair, that claim has no merit. Even if the audiotape constituted hearsay evidence, it does not necessarily follow that petitioner is entitled to federal *habeas corpus* relief. "The wrongful admission of hearsay evidence violates the Confrontation Clause only when the evidence was a crucial, critical or highly significant factor in the framework of the whole trial." Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997) (quotation marks and citations omitted). The audiotape clearly did not rise to that level in this case. The audiotape played *no* role in petitioner's conviction and was not even mentioned by the trial judge in his ruling finding petitioner guilty. Rather, the trial judge made clear that petitioner was convicted based on the credible testimony of the victim, who stated that she and petitioner had sexual intercourse.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Corey Picou be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-sixth day of April, 2007.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**